# 2000 DTA 111

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI-CAGUAS/HUMACAO/GUAYAMA

MIGUEL A. VELEZ RIVERA Y SU ESPOSA, MARIA E. O'NEILL FUENTE, POR SI MISMOS Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Recurrridos

v.

PEP BOYS, FULANO DE TAL Y SUTANO DE TAL Y LAS COMPAÑIAS ASEGURADORAS X,Y, Y Z
Peticionarios

Núm. KLCE-99-00912

San Juan, Puerto Rico, a 29 de febrero de 2000

Panel integrado por su Presidenta, Juez Rivera de Martínez
y los Jueces Colón Birriel y Soler Aquino

Rivera de Martínez, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

La parte peticionaria acude ante nos mediante el recurso de epígrafe presentado el 27 de agosto de 1999 y solicita que revisemos una resolución emitida el 17 de mayo de 1999 por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante la misma, dicho foro determinó que existía responsabilidad por parte de los

demandados, aquí peticionarios, en cuanto a una acción de daños y perjuicios incoada en su contra por la parte recurrida.

La adecuada comprensión del asunto ante nuestra consideración, requiere que expongamos brevemente el trasfondo fáctico y procesal del caso.

# I

El 4 de marzo de 1998, la parte demandante compuesta por Miguel A. Vélez Rivera, María E. O'Neill Fuente y la Sociedad Legal de Gananciales entre ellos constituida, presentó una demanda de daños y perjuicios contra la parte aquí peticionaria.

Alegaron los demandantes que el 19 de diciembre de 1997, la señora O'Neill Fuente acudió a las facilidades de la empresa Pep Boys ubicadas en la Avenida Rafael Cordero, en Caguas, con el propósito de cambiar los neumáticos y hacerle algunas reparaciones a su vehículo de motor, un automóvil Oldsmobile, modelo *"Ninety-Eight"* del año 1989. Allí, cumplimentó la correspondiente documentación (work order) y entregó las llaves de su auto a un empleado, según le fue solicitado. Posteriormente, durante horas de la tarde llegó a recoger el referido vehículo y se le informó que el mismo había sido hurtado del estacionamiento frente al taller de reparación de autos de la empresa.

Los esposos Vélez O'Neill incoaron demanda contra Pep Boys arguyendo descuido y negligencia por parte dicha empresa al omitir guardar el vehículo depositado tomando las debidas precauciones. Reclamaron siete mil novecientos ($7,900) dólares por el valor del vehículo, dos mil trescientos cuarenta ($2,340) dólares por los gastos incurridos para alquilar un auto que le facilitara transportación y quince mil ($15,000) dólares por las angustias mentales sufridas.

Los demandados presentaron su contestación a la demanda, el 15 de mayo de 1998. Negaron haber asumido la custodia del vehículo e interpusieron varias defensas afirmativas.

Luego de comenzar la fase del descubrimiento de prueba, el 11 de marzo de 1999, la parte demandante presentó una moción de sentencia sumaria. Como hechos incontrovertidos señaló los siguientes:

*"1-. El día 19 de diciembre de 1997, la demandante MARIA E. O'NEILL llevó su automóvil al establecimiento de los demandados para realizarle un trabajo.*

*2. Se le entregaron las llaves del vehículo de los demandantes a los demandados, aceptando éstos, tanto el vehículo como las llaves.*

*3. Cuando los demandantes van a recoger su vehículo en el establecimiento de los demandados, éstos le informan que fue hurtado de su establecimiento.*

*4. Se presenta la querella a la Policía de Puerto Rico."*

Acompañó con la referida moción, copia de la orden de trabajo (work order) de 19 de diciembre de 1997 y la querella ante la policía de igual fecha.

La parte demandada presentó un escrito en oposición a la referida moción el 16 de abril de 1999. Alegó que al momento del hurto, el vehículo no había sido abierto o movido por Pep Boys y que fue hurtado del mismo sitio donde el demandante lo estacionó mientras esperaba su turno a ser movido dentro del taller para ser reparado. Añadió que como cuestión de derecho, no respondía por los daños porque el objetivo del contrato entre las partes había sido el de reparar el vehículo y no el de custodiarlo.

Los hechos que planteó no estaban en controversia fueron los siguientes:

"1. La demandada PB es una empresa dedicada, entre otras, a la reparación de vehículos de motor la cual lleva a cabo a través de varias tiendas localizadas en distintos puntos en Puerto Rico.

2. El 19 de diciembre de 1997, la parte demandante llevó su automóvil a la tienda-taller PB localizado en el centro comercial en la Avenida Rafael Cordero en Caguas, Puerto Rico, para ser arreglado.

3. En horas de la mañana, el demandante estacionó su carro en el aparcamiento público del centro comercial cerca, pero no dentro, del taller de PB. Nadie le cobró por dicho estacionamiento. Procedió entonces a entrar a la tienda de PB donde después de haber firmado una orden de trabajo entregó las llaves de su auto al empleado de PB a cargo de recibir clientes.

4. La Orden de trabajo de reparación, la cual el demandante firmó en dos lugares distintos del documento, incluyendo una firma al lado inmediato de una X en el color rojo y tamaño mayor al lado de la cláusula que eximía a PB de toda responsabilidad en caso de robo.

5. El auto del demandante permaneció estacionado en el aparcamiento público del centro comercial donde el demandante lo había dejado esperando su turno. El auto no fue abierto o movido en ningún momento por PB.

6. El auto fue hurtado en horas de la mañana del establecimiento público del centro comercial donde el Sr. Vélez lo había dejado a una distancia no mayor de 30 pies de la entrada del taller de Pep Boys. En ese momento, era temprano en la mañana y ya había mucho tráfico, tanto de clientes del centro comercial caminando por las aceras como de carros en el aparcamiento.

7. Cuando le llegó su turno al auto del Sr. Vélez, el instalador de Pep Boys asignado para reparar el auto fue a buscarlo al lugar donde el Sr. Vélez lo había estacionado y no lo encontró.

8. PB no es dueña ni opera ni ejerce control alguno sobre el área de estacionamiento del centro comercial en cuestión. En ningún lugar en la tienda de PB o en el área de estacionamiento público existe letrero o instrucción alguna que designe un área particular del estacionamiento público dedicada a o controlada por PB. Dicha área de estacionamiento público es mantenida, controlada, operada y vigilada por entidades otra que PB.

9. A la fecha del robo en cuestión, así como también anterior a ello, el área de estacionamiento era patrullada por dos guardias de seguridad en motocicletas empleados o agentes del centro comercial. Más aún, según admitió la propia demandante María O'Neill, en adición a dichos guardias de seguridad dando rondas en el área del estacionamiento público del centro comercial, existían cinco torres de seguridad en el estacionamiento.

10. A la fecha de los hechos, la política de PB era y sigue siendo que los clientes que desean reparar sus carros, ellos mismos dejan sus autos aparcados en el estacionamiento público del centro comercial, y cuando les llega su turno, los mismos son entrados al área de mecánica por un empleado de PB donde luego de ser reparados son egresados al espacio más cercano de la tienda en el estacionamiento público. Dicha política incluye el requisito a los mecánicos que al devolver el auto al estacionamiento público, deben cerciorarse de que lo deja con las ventanas subidas y las puertas cerradas con seguro."

Acompañó con la referida moción, copia de la declaración jurada de Guillermo Alvarez Carrillo, suscrita el 16 de abril de 1999, parte de la deposición de Omar Vélez O'Neill tomada el 12 de agosto de 1998, la orden de trabajo (work order) de Pep Boys fechada 19 de diciembre de 1997 y una declaración jurada suscrita por Efrén A. González el 16 de abril de 1999.

Evaluadas las mociones, el tribunal emitió resolución el 17 de mayo de 1999, resolviendo que Pep Boys era responsable por la pérdida del vehículo de los demandantes. Determinó que la relación existente entre las partes configuró un contrato análogo al contrato de depósito necesario y que el relevo de responsabilidad firmado por la

demandante no tenía eficacia alguna.

Pep Boys presentó una moción reconsideración, a la cual se opuso la parte demandante. El 21 de julio de 1999, el foro de instancia emitió una resolución declarando la misma sin lugar, habiendo sido debidamente notificada el 29 de julio de 1999.

Inconforme, acude ante nos la parte demandada y señala los siguientes errores:

*"A. Asumiendo que existió un contrato de depósito entre las partes, erró el Tribunal de Primera Instancia al concluir que la peticionaria fue negligente en el cuido del vehículo de motor hurtado.*

*B. Erró el Tribunal de Primera Instancia al concluir que era nulo el relevo que le otorgó la recurrida a la peticionaria liberándola de los daños que sufriera el vehículo mientras estuviera fuera del control o por causas fuera del control de la peticionaria.*

*C. Erró el Tribunal de Primera Instancia al concluir que existió un contrato de depósito atípico necesario entre la recurrida y la peticionaria cuando la recurrida contrató a la peticionaria para que le hiciera un trabajo mecánico a su vehículo, no obstante ser la razón principal de dicho contrato el arrendamiento de servicios de mecánica y no la guardia y custodia del vehículo hasta que la recurrida solicitara su devolución."*

El 3 de febrero de 2000, la parte recurrida presentó su oposición a lo solicitado mediante el recurso. Contando con el beneficio de la posición de ambas partes, estamos en condiciones de resolver.

## II

Evaluaremos en conjunto los errores planteados, por estar los mismos íntimamente relacionados.

La controversia ante nuestra consideración se enmarca dentro del contexto de una solicitud de sentencia sumaria. La Regla 36.3 de las de Procedimiento Civil ▉ dispone en lo que respecta a la moción para que se dicte sentencia sumaria y el procedimiento a seguir, lo siguiente:

*"La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."*

Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud y pueden y deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272 (1990).

Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *PFZ Properties, Inc. v. General Accident Insurance Company, P.R., Ltd.,* ___ D.P.R. ___ (1994), **94 J.T.S. 116**, opinión de 7 de septiembre de 1994.

Nuestro Tribunal Supremo ha establecido que el propósito principal de la moción de sentencia sumaria, según dispone la Regla 36 de las de Procedimiento Civil, *supra*, es propiciar la solución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Pilot Life Insurance Company v. Crespo Martínez,* ___ D.P.R. ___ (1994), **94 J.T.S. 104**, opinión de 13 de julio de 1994. Utilizada de forma apropiada, la sentencia sumaria contribuye a descongestionar los calendarios judiciales. *Méndez v. Vocero,* ___ D.P.R. ___ (1992), **92 J.T.S. 94,** opinión de 30 de junio de 1992.

La Regla 36.2 de las de Procedimiento Civil permite a un demandado presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. *Soto v. Caribe Hilton,* ___ D.P.R. ___ (1994), **94 J.T.S. 128**, opinión de 17 de octubre de 1994.

La parte que solicita la sentencia sumaria en un pleito, tiene la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley. *Hurtado Latre v. Osuma y Fresse,* ___ D.P.R. ___ (1995), **95 J.T. S. 98**, opinión de 30 de junio de 1995; *Tello Rivera v. Eastern Air Lines,* 119 D.P.R. 83 (1987).

Para derrotar una moción de sentencia sumaria, la parte promovida opositora deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el proinovente. No obstante, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. *PFZ Properties, Inc. v. General Accident Insurance Company, P.R., Ltd., supra.*

Cuando existe controversia en relación con los hechos esenciales, no debe dictarse sentencia sumaria y cualquier duda debe resolverse en contra de la parte promovente. *Bonilla Medina v. P.N.P.,* ___ D.P.R. ___ (1996), **96 J.T.S. 33**; opinión de 13 de marzo de 1996; *Cuadrado Lugo v. Santiago Rodríguez, supra.*

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado, pues de no utilizarse este remedio sabiamente podría despojarse a un litigante de *"su día en corte"*, principio elemental del debido proceso de ley. Hay litigios y controversias que por su naturaleza no hacen deseable o aconsejable resolverlos mediante una sentencia sumariamente dictada, en vista de que difícilmente en tales casos el tribunal puede reunir ante sí toda la verdad de los hechos a través de declaraciones juradas o deposiciones. Este es el caso de las controversias, donde, para llegar a la verdad, el factor credibilidad juega no sólo un papel esencial, si no el decisivo, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. *Audiovisual Language v. Sistema de Estacionamiento,* ___ D.P.R. ___ (1997), **97 J.T.S. 147**, opinión de 15 de diciembre de 1997. De hecho, los casos en que se plantea si hay o no negligencia, de ordinario, no deben ser resueltos por la vía sumaria a menos que el récord demuestre, con meridiana claridad, que no hay controversia genuina sobre el hecho de la negligencia. *J.A.D.M., v. Centro Comercial Plaza Carolina,* ___ D.P.R. ___ (1993), **93 J.T.S. 26**, opinión de 19 de febrero de 1993; *Lasanta Piñero v. Retto, Inc.,* 100 D.P.R. 694, 698 (1972); *Vda. de Viera v. Tribunal Superior,* 93 D.P.R. 503 (1966).

Por estas razones, el uso de la sentencia sumaria procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, surgiendo de los mismos que no existe controversia sobre los hechos materiales pertinentes y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, (1986); *Roth v. Lugo,* 87 D.P.R. 386, (1963); *Mercado Vega v. U.P.R.,* 128 D.P.R. 273 (1991).

A la luz de la normativa reseñada, debemos evaluar la determinación del foro recurrido. No hay duda de que si observamos los hechos incontrovertidos aducidos por los demandantes, éstos no fueron controvertidos por los demandados. Los hechos alegados a su vez por éstos, lo que hacen es reafirmar los esbozados por los demandantes. El planteamiento general de los demandados consiste en que aun si se tratara de un depósito, ellos

no fueron negligentes. Aducen que el estacionamiento pertenece al centro comercial y que la política es que los clientes tienen que dejar los vehículos allí hasta que llega su turno.

Se ha considerado que un estacionamiento con *"ánimo directo de lucro"* es aquél operado como negocio principal y único mientras que uno con *"ánimo indirecto de lucro"* es operado principal y esencialmente como un servicio para conveniencia de los clientes, parroquianos, o personas relacionadas con algún negocio o actividad que se lleve a cabo en dicha área. En estos casos, la actividad del área de estacionamiento es una de carácter accesorio, como servicio incidental a la actividad real del negocio principal. *Acevedo v. Plaza Las Américas,* 109 D.P.R. 311 (1980).

Bajo la Ley Núm. 120 de 7 de junio de 1973, ■ con respecto a un estacionamiento con *"ánimo de lucro"*, existe una presunción de *"contrato de depósito"* que favorece al usuario. No obstante, cuando se trata de un estacionamiento con *"ánimo indirecto de lucro"*, es necesario que el reclamante demuestre la existencia de responsabilidad. *Acevedo v. Plaza Las Américas, supra.*

En el caso de *Rodríguez Soto v. Adorno,* 104 D.P.R. 640 (1976), nuestro Tribunal Supremo adoptó la definición de la figura del depósito según conceptualizada por el tratadista Puig Peña. En el mismo se definió dicha figura como aquel contrato por cuya virtud una persona entrega a otra de su confianza una cosa, con la sola finalidad de custodiarla hasta que aquella se lo reclame. Añadió dicho foro que la peculiaridad principal del depósito es la de la entrega de un objeto, basada en el elemento de confianza, con el único propósito de conservarlo hasta que se exija su devolución.

Sobre ello, el Artículo 1658 del Código Civil ■ dispone lo siguiente:

*"Se constituye el depósito desde que uno recibe la cosa ajena con la obligación de guardarla y de restituirla."*

En cuanto a la responsabilidad que atañe a un depositario, el Artículo 1666 del Código Civil ■ provee lo siguiente:

*"El depositario está obligado a guardar la cosa y restituirla, cuando le sea pedida, al depositante, o a sus causahabientes, o a la persona que haya sido designada en el contrato. Su responsabilidad, en cuanto a la guarda y la pérdida de la cosa, se regirá por lo dispuesto en las secs. 2991 a 3344 de este título."*

En adición, el Código Civil contempla circunstancias en que se configura un depósito por razón de necesidad. Al respecto, el Artículo 1681 ■ preceptúa:

*"Es necesario el depósito:*

*(1) Cuando se hace en cumplimiento de una obligación legal.*

*(2) Cuando tiene lugar con ocasión de alguna calamidad, como incendio, ruina, saqueo, naufragio u otras semejantes."*

Además, el Artículo 1683 ■ dispone:

*"Se reputa también depósito necesario el de los efectos introducidos por los viajeros en las fondas y mesones. Los fondistas o mesoneros responden de ellos como tales depositarios, con tal que se hubiese dado conocimiento a los mismos, o a sus dependientes, de los efectos introducidos en su casa, y que los viajeros por su parte observen las prevenciones que dichos posaderos o sus substitutos les hubiesen hecho sobre cuidado y vigilancia de los efectos."*

En el caso de autos, la demandante estacionó su auto en el estacionamiento del centro comercial donde ubican las facilidades de la empresa Pep Boys, la cual se dedica, entre otras cosas, a la reparación de vehículos. Allí no hay otro lugar donde estacionar que no sea en el estacionamiento del centro comercial. Luego de cumplimentar los documentos requeridos, le entregó las llaves de su auto a un empleado de dicha entidad con el propósito de que le cambiaran las gomas y le hicieran unas reparaciones. Al llegar a recoger el vehículo, la demandante fue informada de que el vehículo había sido hurtado del lugar.

Surge del expediente que el referido estacionamiento es uno con ánimo indirecto de lucro, razón por la cual a la parte demandante no le cobija la presunción de contrato de depósito.

Aunque el foro recurrido consideró la relación entre las partes como un contrato atípico con las características de un contrato de depósito necesario a la luz de las disposiciones de nuestro Código Civil, sabemos que pretender formalizar una clasificación basada en los caracteres abstractos de ciertas figuras jurídicas no es tarea fácil cuando las características del contrato responden a realidades sociales y económicas de arraigo reciente. *Rivera v. San Juan Racing,* 90 D.P.R. 414 (1964).

Analizados los hechos incontrovertidos aducidos por la parte demandante en armonía con los preceptos legales pertinentes, consideramos acertada la conclusión del foro de instancia a los efectos de que en el caso de autos se configuró un contrato atípico de depósito necesario. Evidentemente, la necesidad de que la empresa peticionaria retenga la custodia del vehículo, obteniendo el control de la llave del mismo para los fines del negocio que opera, hace imprescindible atemperar el derecho a nuestra realidad social y económica actual.

Determinada la naturaleza de la relación entre las partes, corresponde evaluar si responde la empresa Pep Boys por los daños causados.

Conforme al Artículo 1666 del Código Civil, antes citado, el depositario está obligado a guardar la cosa y restituirla, y su responsabilidad se rige por el derecho de obligaciones, según esbozado en nuestro Código Civil.

De otra parte, el Artículo 1047 de dicho cuerpo reglamentario ■ provee lo siguiente:

*"El obligado a dar alguna cosa lo está también a conservarla con la diligencia propia de un buen padre de familia."*

También, el Artículo 1057 del mismo código ■ expresa:

*"La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.*

*Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."*

Corresponde aplicar a los hechos incontrovertidos presentados por la parte demandante la norma de responsabilidad que emana de las referida s disposiciones. Es importante destacar que el negocio de la parte demandada, aquí peticionaria, ofrece servicios a sus clientes y no provee otra alternativa que no sea la de que éstos dejen su vehículo haciendo su turno mientras permanecen estacionados en facilidades que no son de su propiedad. Para ello, los clientes dejan las llaves de sus vehículos en manos del personal de la empresa, confiando en que dicha entidad manejará su negocio de manera responsable. Pensar que la empresa actuaría de forma contraria sería totalmente insólito.

La peticionaria Pep Boys sostiene que a la luz del caso de *Double AA v. Secretario de Justicia,* 109 D.P.R. 235 (1979), los alegados daños sufridos por la parte demandante responden a un caso fortuito. Sin embargo, los hechos de dicho caso son claramente distinguibles del que nos ocupa, razón por la cual el mismo no es aplicable.

Alega, también, la empresa peticionaria que la parte demandante firmó un relevo de responsabilidad que le exime de responder por los alegados daños, el cual lee como sigue:

*"... Pep Boys no será responsable por pérdidas o daños al vehículo o por cosas dejadas en él en caso de fuego, robo o cualquier otra cosa fuera de nuestro control. Pep Boys tendrá el derecho de retener el vehículo de motor hasta que sea satisfecha la cantidad gastada en reparaciones por trabajo realizado bajo un estimado de reparación escrito."*

Nuestro Tribunal Supremo ha expresado que las cláusulas de exoneración no son favorecidas en esta jurisdicción. Con esta norma, se repudian las cláusulas contractuales dirigidas a exonerar *a priori* a un contratante por los daños causados posteriormente al otro contratante por actos negligentes del primero. *Chico v. Editorial Ponce,* 101 D.P.R. 759 (1973). En este caso resolvió también el tribunal, que un factor importante en la determinación de la validez de una cláusula de relevo depende de la fuerza en la negociación de cada uno de los contratantes. Si no se encuentran en igualdad de condiciones y de fuerza, de manera que una parte se sienta obligada a aceptar el relevo de responsabilidad por negligencia de la otra parte, el relevo es nulo. *Chico v. Editorial Ponce, supra.*

A la luz de los hechos incontrovertidos del caso de autos, sería contrario a las normas vigentes sobre la materia interpretar que una cláusula como la reseñada sea eximente de responsabilidad. Corresponde a la empresa peticionaria buscar los mecanismos adecuados que le permitan operar su negocio sin menoscabar la confianza que depositan en éllos sus clientes. No erró al tribunal al así disponerlo.

No habiéndose cometido los errores señalados, debemos confirmar la resolución recurrida.

### III

Por los fundamentos expuestos, expedimos el auto y confirmamos la resolución recurrida. Remítase el caso al Tribunal de Primera Instancia para que continúen los procedimientos en forma consistente con la presente sentencia. Dicho foro deberá resolver si se justifica o no conceder las cuantías solicitadas por los demandantes.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General